# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CHICAGO INSURANCE COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:13-CV-00678-DGK ) |
| THE DIOCESE OF KANSAS CITY–<br>ST. JOSEPH, | ) ) ) ) |
| Defendant. | ) |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TO STAY COMPLAINT FOR DECLARATORY JUDGMENT

This is a declaratory judgment action arising out of an insurance coverage dispute. Plaintiff Chicago Insurance Company ("CIC") provided second-layer excess insurance coverage to Defendant Diocese of Kansas City-St. Joseph ("the Diocese") during the late 1970s and early 1980s. Several individuals and families recently sued the Diocese and certain priests in Missouri state court, alleging that during this time frame Diocesan priests committed sexual abuse which the Diocese enabled and concealed. The Diocese settled some of these lawsuits and then demanded CIC reimburse it for the settlements and defense costs. In response, CIC filed the pending lawsuit seeking a declaratory judgment that it is not liable to the Diocese for these costs.[1]

Now before the Court is the Diocese's Motion to Dismiss or, In the Alternative, Motion to Stay Complaint for Declaratory Judgment (Doc. 16) brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Finding that the *Scottsdale* factors weigh against abstention and seeing no other reason why the Court should abstain from hearing this case, the Court DENIES the motion.

---

[1] CIC had originally joined Thomas O'Brien as a defendant in this case. On January 30, 2014, CIC dismissed all claims against O'Brien without prejudice pursuant to a joint stipulation of dismissal (Doc. 41).

**Standard**

There are two types of challenges to subject-matter jurisdiction under Rule 12(b)(1), "facial" attacks and "factual" attacks. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). A facial attack challenges subject-matter jurisdiction based on the bare allegations in the complaint. A factual attack challenges subject-matter jurisdiction on the basis of matters extrinsic to the pleadings. In a facial attack, the court assumes the allegations in the complaint are true as it would with a Rule 12(b)(6) motion. In a factual attack, the court does not.

The Diocese's motion to stay or dismiss on abstention grounds is a factual attack because it argues that even if the Complaint's allegations are true, the pending state court lawsuits divest the Court of subject-matter jurisdiction to hear this case. Accordingly, Rule 12(b)(6) safeguards do not apply, and the Court may consider matters extrinsic to the Complaint in resolving the motion. *See Osborn*, 918 F.2d at 729 n.6.

**Background**

From 1979 until 1984, CIC issued excess general liability indemnity coverage to the Diocese. During this time, the Diocese employed priests who allegedly sexually abused young boys. Over the past several years, seven victims or their surviving family members sued the Diocese and various priests for torts. The Diocese settled six of those lawsuits in 2008 and one in 2013 ("the settled lawsuits"). Since then, the Diocese has demanded reimbursement from CIC of the costs the Diocese incurred defending and settling these lawsuits.

Between 2010 and 2012, eleven more plaintiffs sued the Diocese and its priests in the state courts of Missouri ("the pending lawsuits"). All eleven of these lawsuits are still pending. The Diocese contends it has claimed a right to reimbursement from CIC on "a number of

lawsuits filed against the Diocese," apparently referring to each of the eleven pending lawsuits (Doc. 17, Exs. A, B).

On July 10, 2013, CIC filed suit in this Court for a declaratory judgment that its 1979–1984 policies do not cover the settled lawsuits. The lawsuit does *not* seek to determine CIC's rights or obligations vis-à-vis the pending state court lawsuits.

Shortly after Plaintiff filed this case, the Court stayed this litigation at the parties' request to allow them to pursue settlement negotiations. Those negotiations were unsuccessful, and the Court now takes up the pending motion to dismiss.

**Discussion**

CIC brings this lawsuit under the Declaratory Judgment Act to clarify its obligations under the insurance policies. *See* 28 U.S.C. § 2201(a). The Diocese argues that the Court should abstain from hearing this case because the eleven lawsuits pending in state court will turn on some of the same issues that will arise here, thus prejudicing the Diocese. If the Court tries this action before the pending lawsuits conclude, then collateral estoppel may preclude the Diocese from relitigating any adverse factual findings made here. If, on the other hand, the Court stays the federal proceeding, CIC might have to wait years for all clergy sexual abuse lawsuits brought against the Diocese to cease before having its rights adjudicated.

A federal court's obligation to exercise the jurisdiction that has been conferred upon it "does not evaporate simply because there is a pending state court action involving the same subject matter." *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997–98 (8th Cir. 2005). At the same time, federal courts have "unique and substantial discretion" whether to hear a case brought under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The scope of a district court's discretion to abstain from exercising jurisdiction under the

Declaratory Judgment Act differs "depending upon whether a 'parallel' state action involving questions of state law is pending." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 967 (8th Cir. 2013). When there are parallel state proceedings, a district court has more discretion to abstain. *Scottsdale*, 426 F.3d at 998.

"Suits are parallel if substantially the same parties litigate the same issues in different forums." *Id.* at 998. "As a functional matter . . . state proceedings are parallel if they involve the same parties or if the same parties may be subject to the state action and if the state action is likely to fully and satisfactorily resolve the dispute" being heard in the federal declaratory judgment action. *Lexington Ins. Co.*, 721 F.3d at 968 (quotations omitted). In making this determination, the district court considers the likelihood that the state court will better resolve such questions and how complete such a resolution will be. *Id.* When in doubt whether the proceedings are parallel, the federal court must exercise jurisdiction. *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009).

Here, the same parties are not involved in the pending state lawsuits. Nor is there a substantial likelihood that the remaining state court lawsuits will resolve the issue presented here, namely, whether CIC is obligated to reimburse the Diocese for costs associated with the seven previously settled lawsuits. Because the pending state lawsuits will not answer this question, they do not relate to the "uncertainty at the heart of the federal declaratory judgment action" and there is no substantial similarity between this case and the pending state cases. *See Lexington Ins. Co.*, 721 F.3d at 968. Thus, the pending state court lawsuits are not parallel proceedings.[2]

---

[2] In its brief, the Diocese argues that the Court has even broader discretion to abstain from exercising jurisdiction, and that the caselaw weighs in favor of abstention. The cases it cites, however, are not analogous. For example, *Montrose Chemical Corp. v. Superior Court* is inapposite because the plaintiffs in that case sought a declaratory judgment under California state law, not the federal Declaratory Judgment Act. 31 Cal. Rptr. 2d 38 (Cal. Ct. App. 1994). And unlike this Court, California state courts may ignore Eighth Circuit precedent. The two Eighth Circuit

Because the pending state lawsuits are not parallel proceedings, the Court's discretion to abstain from hearing this declaratory judgment action is less broad and is exercised under a six factor test first articulated in *Scottsdale Insurance Company v. Detco Industry, Inc.* ("the *Scottsdale* test"). *Lexington Ins. Co.*, 721 F.3d at 968. This test considers:

(1) Whether a declaratory judgment will be useful in clarifying and settling legal relations;

(2) Whether a declaratory judgment will remove the uncertainty, insecurity and controversy that forms the basis for the federal proceeding;

(3) The strength of the state interest in having the issues raised in the federal proceeding decided by the state courts;

(4) Whether the state court can more efficiently resolve the issues raised in the federal action;

(5) If abstention is declined, whether the federal and state court systems will unnecessarily entangle due to overlapping issues of fact or law; and

(6) Whether the declaratory judgment action is merely a device for "procedural fencing."

*Scottsdale,* 426 F.3d at 998.

Applying these factors to the present case, the Court finds as follows. The first two factors concern the ability of a declaratory judgment to clarify the parties' rights and obligations and eliminate the underlying controversy. A declaratory judgment here would conclusively settle CIC's coverage obligations to the Diocese with regard to the settled claims. Although the Diocese asserts that "the coverage disputes between the Diocese and CIC are far greater than the seven claims mentioned in this declaratory judgment action," this argument overlooks the fact

---

district court decisions cited by the Diocese, *Federal Insurance Company v. Sammons Financial Group, Inc.*, 595 F. Supp. 2d 962 (S.D. Iowa 2009) and *Wells Dairy, Inc. v. Travelers Indemnity Company of Illinois*, 241 F. Supp. 2d 945 (N.D. Iowa 2003), are factually distinguishable. In both of these cases, the plaintiff insurance company sought a declaratory judgment concerning its liability for pending, *unresolved* lawsuits. Here, CIC seeks a declaratory judgment concerning its obligation to reimburse the Diocese for costs associated with seven settled, *resolved* lawsuits.

that this lawsuit seeks resolution of coverage disputes in the settled cases, not all coverage disputes that will ever arise between the parties. Thus, the first two factors weigh against abstention.

The third and fourth factors measure the state's interest in, and relative ability to resolve, the underlying controversy in its own court system. The Court finds Missouri has no particular interest in resolving this matter. This case concerns insurance policy construction. No party has raised, and the Court does not foresee, special or unique issues of Missouri statutory or common law insurance principles.[3] A Missouri state court is not better positioned to adjudicate this dispute than a federal court. If anything, a Missouri state court is at a disadvantage in resolving the issue of CIC's obligations, because CIC is not a party to the pending state court lawsuits, and so any decision a state court makes concerning coverage issues in the pending cases would be made without the benefit of hearing argument from CIC. Accordingly, the third and fourth factors weigh against abstention.

The fifth factor examines the potential for entangling the federal and state court systems. With respect to legal issues, there is minimal, if any, overlap between the two cases. The federal case concerns insurance coverage and the pending lawsuits involve torts. Although there is some factual overlap between the cases which will likely result in some duplicative discovery, any prejudice to the Diocese can be managed by sealing any filings or proceedings that might prejudice the Diocese in the pending lawsuits and not unsealing them until after these lawsuits have been resolved. CIC has already indicated that it is amenable to such restrictions, and the Court will hold it to these representations. Therefore, the fifth factor weighs against abstention.

---

[3] In some of the pending lawsuits, state courts have split on the issue of whether the Diocese may be sued on a theory of negligent failure to supervise children. The Diocese argues that this gives Missouri an interest in deciding the pending lawsuits first. However, this divergence on a tort issue is relatively insignificant to the insurance questions central to the federal lawsuit.

The sixth factor asks whether the federal plaintiff is bringing a declaratory judgment action merely for the purpose of procedural fencing. In this case, a declaratory judgment action is the *only* means by which CIC itself can determine its indemnification obligations to the Diocese for the settled claims. The Court senses no gamesmanship on CIC's part, so the sixth factor weighs against abstention.

In sum, after carefully considering the *Scottsdale* factors, the Court holds it should not abstain from hearing this declaratory judgment action.

**Conclusion**

For the foregoing reasons, the Court DENIES Defendant Diocese's Motion to Dismiss or, In the Alternative, Motion to Stay Complaint for Declaratory Judgment (Doc. 16).

**IT IS SO ORDERED.**

Dated:  February 13, 2014            /s/ Greg Kays
                                     GREG KAYS, CHIEF JUDGE
                                     UNITED STATES DISTRICT COURT